IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

KIMBERLY ANN ROBERTSON,

　　　　Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

　　　　Defendant.

No. C14-2005

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................ 2

II.   PRINCIPLES OF REVIEW ....................................... 2

III.  FACTS ......................................................... 4
    A.   Robertson's Education and Employment Background ........... 4
    B.   Administrative Hearing Testimony ......................... 4
        1.   Robertson's Testimony ............................... 4
        2.   Vocational Expert's Testimony ....................... 5
    C.   Robertson's Medical History .............................. 6

IV.  CONCLUSIONS OF LAW ......................................... 8
    A.   ALJ's Disability Determination ........................... 8
    B.   Objections Raised By Claimant ........................... 11
        1.   Dr. Piburn's Opinions .............................. 11
        2.   Credibility Determination .......................... 14
    C.   Reversal or Remand ...................................... 17

V.    CONCLUSION ................................................. 18

VI.  ORDER ...................................................... 18

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 2) filed by Plaintiff Kimberly Ann Robertson on January 22, 2014, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title XVI supplemental security income ("SSI") benefits.[1] Robertson asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her SSI benefits. In the alternative, Robertson requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

---

[1] On April 8, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have

decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Robertson's Education and Employment Background

Robertson was born in 1967. She completed the sixth grade. At the administrative hearing, when asked why she only completed the sixth grade, Robertson testified that "I just never made it through the seventh. I got expelled three times and a Judge took me out."[2] In her past, she held a job as a sandwich maker.

### B. Administrative Hearing Testimony

#### 1. Robertson's Testimony

At the administrative hearing, the ALJ asked Robertson why she believed she was unable to work:

> Q: So maybe you can tell me then, in your own words, Ms. Robertson, why can't you work? You know, what would keep you from being able to go 40 hours a week at some kind of a simple job that wasn't too demanding where you could just go there and do it?
> A: My anxiety has a lot to do with my dealing with the outside world, and I don't leave the house much. I'm really paranoid. I stay in most of the time.
> Q: Okay. All right. So then, what you're telling me is your biggest problem would be that you simply couldn't leave the house. You're stuck at home and you just don't want to leave the house, is that right?
> A: Correct, Judge.
> Q: And how often can you leave the house?
> A: I get out maybe three times a month, I'll get out --
> Q: Okay.

---

[2] Administrative Record at 367.

4

> A: -- for a little bit.
> Q: So pretty much it would be almost every day you simply couldn't be able to get out of the house, you wouldn't be able to go to work?
> A: Correct, Judge.

(Administrative Record at 377-78.) Robertson stated that one of the primary reasons she has difficulty leaving her house is she "can't handle crowds. I can't do crowds."[3] The ALJ further questioned Robertson regarding her anxiety:

> Q: . . . Now, what if you had a job, though, where you didn't have to deal with a lot of people? I mean, there wouldn't be a lot of people there, you'd be working kind of in a solitary sort of environment. Would you be able to do something like that?
> A: I don't see myself doing something like that because I stay at home a lot. I don't get out that much at all.

(Administrative Record at 379.) Robertson also testified that due to her anxiety, she lies down for about an hour periodically throughout the day, sometimes up to four times per day.

The ALJ also inquired about Robertson's physical capabilities. He asked her whether she had any difficulties with lifting, carrying, standing, sitting, moving about, or holding onto things. Robertson replied that she "[c]an't lift that much and I don't sit and stand for very -- I got to sit and stand off and on unless I'm laying down. And when I'm at home, I lay down and sleep a lot."[4]

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Julie Svec with a hypothetical for an individual who is:

---

[3] Administrative Record at 378.

[4] Administrative Record at 380.

> capable of performing light work . . . who can have brief and
> superficial interaction with the public and co-workers and
> occasional interaction with supervisors.

(Administrative Record at 400.) The vocational expert testified that under such limitations, Robertson could not perform her past relevant work. The vocational expert testified, however, that Robertson could perform the following jobs: (1) folder, (2) pricer, and (3) housekeeper. The ALJ asked the vocational expert a second hypothetical that was identical to the first hypothetical except that the individual needed to alternate positions from sitting to standing every 30 minutes, but could remain in the same work area and continue his or her duties. The vocational expert testified that under such limitations, Robertson could perform the jobs she identified in the first hypothetical. Lastly, the ALJ inquired whether "if the person isn't able to attend to work tasks, say two days a week, would that preclude any work?"[5] The vocational expert replied that such a limitation would preclude competitive employment.

### C. Robertson's Medical History

On February 11, 2010, Robertson met with Dr. Marvin Piburn, Jr., M.D., for routine individual therapy and medication management. Dr. Piburn diagnosed Robertson with depression, anxiety, and borderline and self-defeating personality disorder. Dr. Piburn rated her GAF score at 50-55. Dr. Piburn adjusted her medication as treatment.

On July 27, 2010, Robertson returned to Dr. Piburn for a follow-up appointment. Her diagnoses of depression, anxiety, and borderline and self-defeating personality disorder were continued. Dr. Piburn also noted that Robertson was having sleep difficulties. Dr. Piburn, again, rated Robertson's GAF score at 50-55. Dr. Piburn continued to treat Robertson with medication.

---

[5] Administrative Record at 402.

On October 13, 2010, Robertson had another follow-up appointment with Dr. Piburn. She reported being "paranoid" and being "afraid" to take her medications. Upon examination, Dr. Piburn diagnosed Robertson with mood disorder (likely bipolar disorder), anxiety, panic-phobia, obsessive fears, and borderline and histrionic personality disorder. Dr. Piburn found that Robertson's symptoms included: depression, high anxiety, hallucinations, delusional thinking, decreased energy, decreased memory, attention, and concentration, and decreased motivation. Dr. Piburn rated her GAF score at 50. Dr. Piburn continued to treat her with medication.

On February 23, 2011, at the request of Robertson's attorney, Dr. Piburn filled out a "Psychiatric/Psychological Impairment Questionnaire" for Robertson. Dr. Piburn opined that Robertson has a disabling "psych illness" based on diagnoses of bipolar disorder, severe anxiety, likely learning disability, and borderline and histrionic personality disorder. Dr. Piburn rated her GAF score at 50-55. Dr. Piburn identified the following signs and symptoms for Robertson: poor memory, sleep disturbance, personality change, mood disturbance, emotional lability, history of panic attacks, paranoia, feelings of guilt or worthlessness, difficulty thinking and concentrating, past suicide attempts, social withdrawal and isolation, decreased energy, generalized persistent anxiety, and irritability. Dr. Piburn determined that Robertson had marked limitations in the ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without supervision, work in coordination or proximity to others without being distracted by them, make simple work-related decisions, complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond

7

appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and travel to unfamiliar places or use public transportation. Dr. Piburn also opined that Robertson would have difficulty performing work-related activities due to no schooling beyond the seventh grade, possible learning disabilities, and history of ADHD. Dr. Piburn believed that only "limited types of work [would be] possible [for Robertson]."[6] Finally, Dr. Piburn opined that Robertson was incapable of even low stress jobs and would miss on average more than 3 days of work per month due to her impairments or treatment for her impairments.

On April 24, 2012, Dr. Piburn, again, filled out a "Psychiatric/Psychological Impairment Questionnaire" for Robertson. Dr. Piburn's opinions were virtually unchanged from his opinions contained in the February 2011 questionnaire. On June 25, 2013, Dr. Piburn provided a letter to Robertson's attorney regarding her mental health condition and functional limitations. Dr. Piburn diagnosed Robertson with major depressive disorder with psychotic features, panic disorder with agoraphobia, and anxiety disorder. Dr. Piburn opined that Robertson "is not capable of working as it would cause an exacerbation of her mental health symptoms."[7]

### IV. CONCLUSIONS OF LAW

#### A. ALJ's Disability Determination

The ALJ determined that Robertson is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

---

[6] Administrative Record at 245.

[7] Administrative Record at 362.

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden

9

shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Robertson had not engaged in substantial gainful activity since April 23, 2010. At the second step, the ALJ concluded from the medical evidence that Robertson had the following severe impairments: borderline personality disorder vs. major depressive disorder and generalized anxiety disorder, drug and alcohol abuse, and a syndrome of lower back pain of unknown etiology. At the third step, the ALJ found that Robertson did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Robertson's RFC as follows:

> [Robertson] has the residual functional capacity to perform light work . . . except: she can only have brief, superficial contact with the public and co-workers, and superficial contact with supervisors.

(Administrative Record at 16-17.) Also at the fourth step, the ALJ determined that Robertson could not perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Robertson could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Robertson was not disabled.

## B. Objections Raised By Claimant

Robertson argues that the ALJ erred in two respects. First, Robertson argues that the ALJ failed to properly evaluate the opinions of her treating psychiatrist, Dr. Piburn. Second, Robertson argues that the ALJ failed to properly evaluate her subjective allegations of disability.

### 1. Dr. Piburn's Opinions

Robertson argues that the ALJ failed to properly evaluate the opinions of her treating psychiatrist, Dr. Piburn. Specifically, Robertson argues that the ALJ's reasons for discounting Dr. Piburn's opinions are not supported by substantial evidence in the record. Robertson concludes that this matter should be remanded for further consideration of Dr. Piburn's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d

561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

The ALJ addressed Dr. Piburn's opinions as follows:

> Marvin Pilburn [(*sic*)], M.D., completed a medical source statement in February 2011 that found [Robertson] was markedly limited in her abilities, incapable of even low stress jobs, and would miss four or more days of work per month. However, he also gave her a GAF of only moderate limitations. The undersigned gives little weight to this medical

12

> source statement. While the undersigned agrees that
> [Robertson] has limitations, a review of the longitudinal
> medical evidence of record does not support that the
> limitations are as severe as those found by Dr. Pilburn [(sic)].
> Dr. Pilburn [(sic)] completed an additional medical source
> statement in April 2012, which placed similar limitations as his
> previous statement, however, this statement is not consistent
> with his own 2012 treatment records, which demonstrate that
> [Robertson's] mood and anxiety were stable. Overall, the
> restrictions he placed upon [Robertson] are not supported by
> the medical evidence as a whole. This opinion is given scant
> weight.

(Administrative Record at 20.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The Court finds that the ALJ has not fully met these requirements. First, the ALJ incorrectly states that Dr. Piburn's GAF scores equate to only moderate symptoms. In the February 2011 questionnaire, Dr. Piburn assessed Robertson's GAF score at 50-55.[8] In the April 2012 questionnaire, Dr. Piburn assessed Robertson's GAF score at 50.[9] The Eighth Circuit Court of Appeals has noted that a GAF score between 41 and 50 "reflects *serious limitations* in the patient's general ability to perform basic tasks of daily life." *Brueggemann*, 348 F.3d at 695 (emphasis added). A GAF score of 51 to 60 is "indicative

---

[8] *See* Administrative Record at 240.

[9] *Id.* at 261.

of 'moderate symptoms' or 'moderate difficulty in social, occupational, or school functioning.'" *Lacroix v. Barnhart*, 465 F.3d 881, 883 (8th Cir. 2006) (quotation omitted). In *Pate-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009), the Eighth Circuit found that a GAF score in the 51-60 range was not "inconsistent with [an] opinion that [the claimant] was permanently disabled for any type of employment, nor does it constitute substantial evidence supporting the ALJ's conclusion she is not disabled." *Id.* (citing *Colon v. Barnhart*, 424 F. Supp. 2d 805, 813-14 (E.D. Pa. 2006)). Second, the ALJ states that the longitudinal medical evidence does not support Dr. Piburn's opinions, but the ALJ offers no support for his contention. Indeed, the ALJ points to no evidence, medical or otherwise, to support such a proposition. Finally, standing alone, the Court believes that a statement in a treatment note, from a particular point in time, that Robertson's mood and anxiety were stable is not sufficient for discounting Dr. Piburn's opinions.

Therefore, under such circumstances, and having reviewed the entire record, the Court concludes the ALJ has failed to give "good reasons" for rejecting the opinions of Dr. Piburn. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in her duty to fully and fairly develop the record with regard to Dr. Piburn's opinions. Accordingly, the Court determines that this matter should be remanded for further consideration of Dr. Piburn's opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Piburn's opinions and support her reasons with evidence from the record.

### 2. *Credibility Determination*

Robertson argues that the ALJ failed to properly evaluate her subjective allegations of disability. Robertson maintains that the ALJ's credibility determination is not supported

by substantial evidence. The Commissioner argues that the ALJ properly considered Robertson's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*,

353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In her decision, the ALJ properly set forth the law for making a credibility determination under the Social Security Regulations.[10] The ALJ also addressed some of the *Polaski* factors and offered some reasoning for finding Robertson's subjective allegations of disability less than credible.[11] Under such circumstances, the Court would normally affirm the ALJ's credibility determination. The Court is reluctant to affirm the ALJ's credibility determination in this instance, however, because Robertson's testimony is supported by the opinions of her treating psychiatrist, Dr. Piburn. This is significant for two reasons. First, the record is void of any other opinions from treating doctors, consultative examining doctors, or even non-examining state agency doctors regarding Robertson's functional abilities or limitations. Second, as discussed in section *IV.B.1* of this decision, the Court determined that the ALJ failed to fully and fairly develop the record and properly consider Dr. Piburn's opinions. Dr. Piburn opined that Robertson had

---

[10] *See* Administrative Record at 18-19.

[11] *Id.* at 19-20.

significant limitations stemming from her mental impairments that were not properly addressed by the ALJ.[12] Accordingly, the Court believes that in remanding this matter for further consideration of the opinions of Dr. Piburn, the ALJ should also further consider Robertson's allegations of disability in light of his reconsideration of the pertinent medical source opinions and records. *See Wildman*, 596 F.3d at 968 (providing that an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole"); *Finch*, 547 F.3d at 935 (same); *Lowe*, 226 F.3d at 972 ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."); *see also Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to develop the record fully and fairly). Therefore, the Court remands this matter for further development of Robertson's credibility determination.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

---

[12] *Id.* at 240-247 (February 2011 questionnaire); 261-268 (April 2012 questionnaire); 362 (Letter from Dr. Piburn stating "[i]t is felt that [Robertson] is not capable of working as it would cause an exacerbation of her mental health symptoms.").

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record with regard to the opinions of Dr. Piburn, and (2) make a proper credibility determination in this matter. Accordingly, the Court finds that remand is appropriate.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to the opinions of Dr. Piburn. The ALJ must also consider all of the evidence relating to Robertson's subjective allegations of disability, and address his reasons for crediting or discrediting those allegations, particularly in light of his consideration of Dr. Piburn's opinions.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 7th day of November, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA